# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON

**GEORGE A. BARNHART,**

    **Plaintiff,**

**v.**                                                                        **Civil Action No. 2:16-cv-04059**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), Defendant's Brief in Support of Defendant's Decision (ECF No. 11) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for supplemental security income (SSI) under Title XVI of the Social Security Act.

George Alan Barnhart, Claimant, applied for SSI on April 25, 2013, alleging disability beginning on March 7, 2006. The claim was denied initially on July 24, 2013, and upon reconsideration on September 20, 2013. On October 22, 2013, Claimant made a request for a hearing before an Administrative Law Judge (ALJ). On October 6, 2014, Claimant appeared before an ALJ in Charleston, West Virginia. The ALJ denied Claimant's application on October 27, 2014. Claimant's request for a review by the Appeals Council (AC) was denied on December 23, 2014. Subsequently, Claimant brought the present action requesting this Court to reverse and remand the decision of the Commissioner.

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job,

and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the application date of April 25, 2013 (Tr. at 30). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of: borderline intellectual functioning; learning disability in reading; depression; anxiety disorder; personality disorder; history of polysubstance abuse; and lumbar degenerative disc disease with chronic low back pain. (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 31). The ALJ then found that Claimant has a residual functional capacity to perform light work except he can lift and carry twenty pounds occasionally and ten pounds frequently. He can stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. Claimant can never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Claimant must avoid concentrated exposure to extreme cold, wetness, vibration, hazards, machinery and heights. He is limited to simple, repetitive, routine tasks and no production rate pace of quota type of job. Claimant is limited to making simple work-related decisions and to tolerate few or infrequent changes in a routine work setting. Claimant can have occasional interactions with supervisors, co-workers and the public (Tr. at 33- 34). The ALJ found that Claimant has no past relevant work (Tr. at 38). Due to limitations affecting Claimant's ability to perform the requirements of representative occupations, the ALJ relied on Vocational Expert (VE) testimony at the hearing that Claimant could perform jobs such as janitor, hand bander and sorter. (Tr. at 39). On this basis, benefits were denied (Tr. at 39- 40).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## Claimant's Background

Claimant was born on July 16, 1963, and was 49 years old on the application date. Claimant last completed the ninth grade. In school Claimant took some special education and small group classes (Tr. at 55-56). Claimant has never had a driver's license because he has failed to pass the test on two occasions (Tr. at 56).

## The Medical Record

The Court has reviewed all evidence of record and will address those portions which are relevant to the issues raised by Claimant.

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the present ALJ, Peter Jung, failed to comply with Acquiescence Ruling 00-1(4). Claimant asserts that ALJ Jung failed to perform the requisite analysis to determine if Claimant's intellectual impairment met or equaled Listing 12.05C (ECF No. 10). In response, Defendant asserts that ALJ Jung complied with AR 00-1(4) when he considered each of its factors in deciding to give little weight to the decision of prior ALJ, Harry C. Taylor, II (ECF No. 11). Defendant avers that substantial evidence supports ALJ Jung's Listing 12.05 finding because Claimant cannot meet the criteria for the listing.

Discussion

Weight Given to Medical Opinions

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2), 416.927(d)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 416.927(d)(2), 404.1527 (2016). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 416.927(d)(2), 404.1527 (2016). Under §§ 416.927(d)(2)(ii) and 404.1527, the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(c)(2)(3), (4) and (5), 416.927(d)(3), (4), and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 416.927(d)(2), 404.1527(c)(2).

Under §§ 416.927(d)(1), 404.1527(b) and (c), more weight generally is given to an examiner than to a non-examiner. Sections 416.927(d)(2), 404.1527(c) provide that more weight

6

will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005). The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) and 416.927. If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight. *See* 20 C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig v. Chater*, 76 F.3d 585, at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work. These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that

an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c) of §§ 404.1527 and 416.927.[1]

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

<u>Acquiescence Ruling 00-1(4)</u>

Claimant argues that "ALJ Jung has done exactly what AR 00-1(4) and the Fourth Circuit Decisions in *Lively* and *Albright* [*infra*] directed against – he 'thwarted the legitimate expectations of claimants and, indeed, society at large – that final agency adjudications should carry considerable weight.'" (ECF No. 10). In *Albright*, an ALJ denied Albright's disability application on May 28, 1992. Albright did not appeal the adverse decision. *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999). In November and December 1992, Albright filed disability applications which the Social Security Commissioner considered to be new claims, relating to Albright's condition subsequent to the prior adjudication, *i.e.*, from May 29, 1992, onward. On October 26, 1994, a second ALJ denied Albright's disability applications relying on the Fourth Circuit's holding in *Lively v. Secretary of HHS*, 820 F.2d 1391 (4th Cir.

---

[1] Medical opinions are given weight in consideration of the following factors: examining relationship, treatment relationship, length of treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization and other factors.

9

1987).

Section 405(h) states that the findings and decision of the Social Security Commissioner after a hearing shall be binding upon all individuals who were parties to such hearing. The Court in *Lively* found:

> It is by now well-established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases. *Benko v. Schweiker*, 551 F. Supp. 698, 701 (D. N.H. 1982). Congress has clearly provided by statute that *res judicata* prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final, 42 U.S.C. § 405(h), and the courts have readily applied *res judicata* to prevent the Secretary from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding. *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987).

In *Albright*, the Court stated that "When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision… on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding."

The Court in *Albright* held that "The SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." The Fourth Circuit found that "The SSA's treatment of later-filed applications as separate claims is eminently logical and sensible, reflecting the reality that the mere passage of time often has a deleterious effect on a claimant's physical or mental condition." However, AR 94-2(4) provides an exception to the general rule that separate claims are to be considered separately. This exception essentially merges two claims into one resulting in a second decision finding the same sequential evaluation

findings as previously determined in a previous disability application.

## Medical Opinions

In 1995, Claimant underwent intellectual capacity testing using the Wechsler Adult Intelligence Scale – Revised (WAIS-R), and obtained a full scale IQ of 66 and a verbal IQ of 72 (Tr. at 218). The test was administered by examining physician Paul Young, Ph.D.. Dr. Young assessed Claimant as being unable to manage his finances and diagnosed Claimant with mild mental retardation[2] (Tr. at 222). In 2006, consultative psychologist John Atkinson, M.A., administered the Wechsler Adult Intelligence Scale – Third Edition test. Claimant scored a full scale IQ of 70, performance IQ of 67 and verbal IQ of 77 (Tr. at 228). Mr. Atkinson reported that Claimant could read and perform math on the 3.3 grade level. ALJ Taylor applied the Fourth Circuit decision in *Luckey v. U.S. Dept. of Health and Human Services*, 890 F.2d 666, 668 (4th Circuit 1989), to find that Claimant's 1995 IQ scores were reflective of his current cognitive abilities (Tr. at 70). However, ALJ Jung gave little weight to Dr. Young's opinion "because it is almost twenty years old and it is based on impairments that do not exist, at least not to the extent they did in 1995" (Tr. at 37).

ALJ Taylor's decision included the following discussion regarding Claimant's IQ scores:

> The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. The evidence does not establish the presence of the "C" criteria with regard to the claimant's impairments.
>
> Concerning the first prong of Section 12.05C, the undersigned notes that the IQ scores contained in the record were obtained after the

---

[2] The term intellectual disability has replaced the term mental retardation used in previous versions of the Listings. 20 CFR Pt. 404, Subpt. P, Appx. 1, § 12.05.

claimant's 22nd birthday. However, the Fourth Circuit Court of Appeals held that "the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22." *Luckey v. U.S. Dept. of Health and Human Services*, 890 F.2d 666, 668 (4th Cir. 1989). The Court went on to say that "in the absence of any evidence of a change in the claimant's intelligence functioning, it must be assumed that the claimant's IQ [has] remained relatively constant. *Id.* The undersigned finds that *Luckey* applies in this case and that the claimant meets the first prong of section 12.05C.

The evidence includes a consultative psychological evaluation performed by Frank B. Eibl, M.A., supervised psychologist, and Paul O. Young, Ph.D., licensed psychologist, dated January 30, 1995. The claimant reported mild feelings of paranoia, moodiness, irritability, quick temper, and tremors. He reported difficulty coping with even minimum levels of stress and pressure. He had difficulty making routine daily decisions. He had low morale, low energy level, and tired quickly. She [sic] had feelings of hopelessness, uselessness, and worthlessness. He had suicidal thoughts. He had difficulty with interpersonally interacting with others and preferred to stay to himself. He had patterns of forgetfulness and significant difficulty with attention and concentration. The claimant admitted to history of alcohol abuse. On the WAIS-III, the claimant obtained a verbal IQ of 72, performance IQ of 62, and a full scale IQ of 66. Mr. Eibl indicated that the claimant could be prone to impulsive and possible violent responses and indicated very significant difficulties being able to adequately interact with others and to handle authority and supervision. Contact with reality seemed very tenuous and reasoning, judgment and insight appeared to be significantly impoverished. Memory processes were limited with regard to long term, short term, and immediate recall abilities. Attention and concentration difficulties were highly indicated and the claimant was very easily distracted. The claimant was diagnosed with alcohol dependence; polysubstance dependence; dysthymic disorder; generalized anxiety disorder; mild mental retardation; and borderline personality disorder.

The evidence includes a consultative psychological evaluation performed by John R. Atkinson, Jr., M.A., licensed psychologist, dated April 19, 2006. Mr. Atkinson indicated that the claimant was rather preoccupied and tended to enhance symptoms. The claimant reported "I just-can't-focus, and can't deal with being around people. I don't deal with with the public, paranoid like, problems concentrating and thinking." He reported incessant initial insomnia with intermediate and terminal awakening and then would have a

> tendency to sleep through the day. He reported bad dreams of "destruction and bad things happening." His eating patterns were poor and he had lost about 18 pounds. He was "raised in an abusive environment." He felt depressed all the time, "working against me, I don't socialize, sadness, loss of interest, cannot concentrate, problems thinking and concentrating." The claimant reported obsessive thoughts of "death, or harm to me or my family" and compulsive picking of his fingers. The claimant reported going to school to the ninth-grade and quit at age 15. He had poor attendance record and was in some kind of special education classes. He was in no extracurricular activities and had few or no friends because he did not mix well with others. He was a discipline problem and did not like school. He cannot read labels or directions. On the WAIS-III, the claimant obtained a verbal IQ of 77, performance IQ of 67, and full scale IQ of 70. On the WRAT-3, the claimant was found to be reading on the third-grade level and performing arithmetic on the third-grade level. Mr. Atkinson indicated that the WRAT-3 scores were valid due to average effort and suggested that the claimant was in fact learning disabled in reading. Mr. Atkinson indicated that the claimant's attitude was submissive, downcast, and pitiful acting and social rapport was uneasy. The claimant was partially oriented as to time, did not know the date, but did know the month and year. His observed mood was subdued and depressed and his affect diminished. His recent memory was moderately impaired, psychomotor slowed, and pace slow. The claimant reported that he did not attend church. He did see "acquaintances" and stayed with this mother every couple of months. He did not engage in entertainment outside the home. He wandered around the streets during the day. He did not perform any work or chores. He had no reading preferences and no hobbies or interests. The claimant was diagnosed with depressive disorder, not otherwise specified, provisional; anxiety disorder, not otherwise specified, provisional; paranoid personality traits; rule out borderline intellectual functioning. The claimant's prognosis was uncertain.
>
> The undersigned finds the IQ scores valid because the scores the claimant received in the psychological evaluation in 1995 and the scores in the current evaluation by Mr. Atkinson are commensurate.

On June 28, 2013, Paul Dunn, Ph.D., conducted a consultative mental status evaluation of Claimant (Tr. at 235). Dr. Dunn reported that Claimant's pace was within normal limits and that he was marginally capable of managing his own funds (Tr. at 238). Dr. Dunn assessed that

13

Claimant had moderate limitations in social functioning, judgment, maintaining concentration and persistence. Dr. Dunn indicated that Claimant's functional deficits were likely secondary to his borderline intellectual functioning (Tr. at 239). ALJ Jung gave the opinion and GAF score determination of Dr. Dunn some weight "as it provides some insight into the claimant's level of functioning at that point in time" (Tr. at 36).

On July 22, 2013, State agency non-examining psychological expert, G. David Allen, Ph.D., reviewed the evidence and opined that Claimant was capable of learning and recalling simple instructions and performing simple, routine, repetitive tasks. State agency non-examining psychological expert, Jim Capage, Ph.D., reviewed the file and agreed with Dr. Allen's assessment. ALJ Jung gave great weight to the opinions of Dr. Allen and Dr. Capage (Tr. at 37).

On December 2, 2013, Tiffany Dudley, B.A., at Westbrook Health Services, conducted a mental health assessment of Claimant (Tr. at 242-252). Ms. Dudley reported that Claimant was exhibiting symptoms of anxiety manifested by sleep disturbances, racing thoughts, panic attacks, feelings of worthlessness and hopelessness, trouble concentrating, worry, nervousness and social isolation (Tr. at 250). Ms. Dudley assessed Claimant with a GAF score of 65, however, it is unclear how Ms. Dudley reached that determination. In regards to the opinion of Ms. Dudley, ALJ Jung gave greater weight "to the observations of the evaluators and the objective findings in the record" (Tr. at 37).

<u>Prior Disability Findings</u>

Claimant's previous application for SSI was granted on May 17, 2007, by ALJ Harry C. Taylor, II (Tr. at 72). ALJ Taylor held that Claimant's severe impairments of mild mental retardation, affective disorder, anxiety-related disorder and personality disorder met the criteria of Listing 12.05C (Tr. at 70). The prior decision addressed the time period from Claimant's

application date of March 7, 2006, through Claimant's date of incarceration.[3]

ALJ Taylor held that the IQ scores provided by Dr. Young and Mr. Atkinson were valid (Tr. at 71). ALJ Taylor gave the State agency medical opinions "little weight because the State agency consultants did not adequately consider the claimant's subjective complaints or the combined effect of the claimant's impairments." (*Id.*)

Weight Given to ALJ Taylor's Decision

ALJ Jung stated that he considered ALJ Taylor's decision in accordance with Social Security Acquiescence Ruling 00-1(4) (Tr. at 38). ALJ Jung held:

> [T]he undersigned gives the prior decision little weight because new evidence not previously considered provides a basis for reaching a different conclusion on the severity of the claimant's mental impairments: Dr. Dunn's consultative evaluation and Ms. Dudley's evaluation show the claimant was higher functioning that [sic] previously found. In addition, the opinion evidence from the State agency consultants, who considered the prior ALJ decision, supports giving the decision little weight. The overwhelming evidence discussed in this decision supports finding the claimant is not mildly mentally retarded and therefore, he does not meet listing 12.05C, as the prior Administrative Law Judge determined. (*Id.*)

Listing 12.05C

At step three of the sequential evaluation, ALJ Jung found that the severity of Claimant's medical impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.02, 12.04 and 12.06 (Tr. at 31).

Listing 12.05 for Intellectual Disability states:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.

---

[3] Upon review of the record, the date of Claimant's incarceration is unclear.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
B. A valid verbal, performance or full scale IQ of 59 or less; OR
C. A valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitations; OR
D. A valid verbal, performance or full scale IQ of 60 through70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

In the decision by ALJ Taylor, Claimant had the severe impairments of mild mental retardation, affective disorder; anxiety-related disorder and personality disorder which met or met in combination the criteria of Listing 12.05C (Tr. at 70). In the decision by ALJ Jung, Claimant was found to not have an impairment or combination of impairments that meet or equals the severity of a listed impairment (Tr. at 31). ALJ Jung stated that when considering the severity of Claimant's mental impairments, he compared the criteria of Listings 12.02 Organic Mental Disorders, 12.04 Affective Disorders and 12.06 Anxiety Related Disorders. Besides holding that the evidence does not support a finding of intellectual disability under Listing 12.05C, ALJ Jung did not discuss Listing 12.05C (Tr. at 38).

Defendant asserts "The fact that the ALJ [Jung] did not specifically articulate findings for each of Listing 12.05's subparagraphs was not error because the record does not support that Plaintiff satisfies the initial criteria of Listing 12.05. ALJ Jung more specifically considered Listings 12.02, 12.04 and 12.06, all of which related to mental disorders and have identical subsection B, which is also identical to Listing 12.05D (1-4)" (ECF No. 11).

Contrary to Defendant's suggestion, ALJ Jung's consideration of Listings 12.02, 12.04 and 12.06, does not equal an analysis of the criteria for Listing 12.05C. Moreover, since the date of ALJ Taylor's decision, May 17, 2007, no additional intelligence testing has been administered.

Conclusion

The undersigned suggests the District Judge find that ALJ Jung failed to explain the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6) in determining the weight given to Dr. Young, Mr. Atkinson, Dr. Allen and Ms. Dudley. Additionally, the undersigned respectfully recommends that the District Judge find that ALJ Jung's holding that "new evidence not previously considered provides a basis for reaching a different conclusion on the severity of the claimant's mental impairments" is insufficient to demonstrate why ALJ Jung did not adopt ALJ Taylor's finding that Claimant meets Listing 12.05C.

Therefore, the undersigned respectfully recommends that the evidence be developed on remand by ordering a consultative examination of Claimant including IQ testing. This Court makes no recommendation as to Claimant's remaining arguments. These issues may be addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **DENY** the Defendant's Brief in Support of Defendant's Decision (ECF No. 11), **REVERSE** the final decision of the Commissioner, and **REMAND** this case for further development of the record that shall include a consultative examination containing IQ testing and a new hearing by an Administrative Law Judge and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 3, 2017

Dwane L. Tinsley
United States Magistrate Judge